UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
Eastern Division

| | | |
|---|---|---|
| In Re: | ) | BK No.:   12-19621 |
| ADVANCE PRESORT SERVICE, INC. | ) | |
| | ) | |
| | ) | Chapter:  11 |
| | ) | Honorable Donald R. Cassling |
| | ) | |
| | ) | |
| Debtor(s) | ) | |

**ORDER (I) ESTABLISHING BIDDING PROCEDURES IN CONNECTION
WITH SOLICITATION OF OFFERS FOR SALE OF ASSETS;
(II) AUTHORIZING PROCEDURES FOR THE ASSUMPTION; (III) APPROVING
FORM, MANNER, SCOPE AND SUBSTANCE OF NOTICE FOR
PROPOSED SALE OF DEBTOR'S ASSETS; AND (IV) ESTABLISHING TIME
AND DATE OF AUCTION, FINAL HEARING AND OBJECTION DEADLINE**

THIS MATTER COMING TO BE HEARD upon the Motion of  Advance Presort Service, Inc. an Illinois corporation, debtor/debtor-in-possession herein ("Debtor"),  for Authority to A) Sell Assets Outside of Ordinary Course of Business; B) Establishing Sale Procedures; C) Set a Hearing Date on Sales; and D) Approve Form of Notice (the "Sale Motion"), due and proper notice having been given under the circumstances, and the Court being fully advised in the premises; and the Court finding that:

(a) jurisdiction over this matter is proper;
(b) venue is proper in this Court;
(c) notice of the Sale Motion was sufficient under the circumstances;
(d) the bidding procedures attached to this Order as Exhibit A are reasonable and appropriate and are designed to maximize the recovery received from the Sale of the Assets; and
(e) it appearing that the relief requested in the Sale Motion is in the best interests of the Debtor and its estate.

NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that:

1. The Bidding Procedures attached to this Order as Exhibit A are hereby approved in their entirety.

2. A final hearing to consider approval of the Sale of the Assets of the Debtor shall be held before the Honorable Donald R. Cassling on November 27, 2012 at 10:30 a.m. in Room 619 at the United States Bankruptcy Court in the Everett McKinley Dirksen Federal Building, 219 South Dearborn Street, Chicago, Illinois, or as soon thereafter as counsel may be heard (the "Sale Hearing").  The Sale Hearing may be adjourned from time to time, without further notice to creditors or parties in interest other than by announcement in open Court or on the Court's calendar on the date schedules for the Sale Hearing.

3. The Form of Notice attached hereto as Exhibit B (the "Notice") is hereby approved and the Debtor is authorized to send the Notice to (a) the Office of the United States Trustee; (b) relevant taxing authorities, including the Internal Revenue Service; (c) all known creditors; (d) the official service list; (e) all parties reported to have filed with respect to the Debtor's UCC financing statement in Illinois; (f) counsel for ACB; and (g) all potential purchasers known by the Debtor.

4. The Debtor is authorized to publish a notice substantially in the form of the Sale Notice attached hereto as Exhibit C in a local daily publication that the Debtor determines will promote the marketing and sale of the Purchased Assets, within seven (7) days following the entry of this Order.

5. The Auction shall take place on November 21, 2012 at 10:00 a.m. (the "Auction Date") at the law offices of Crane, Heyman, Simon, Welch & Clar, 135 South LaSalle St., Suite 3705, Chicago, Illinois 60603 (the "Auction"). Only API Holding, LLC and Potential Purchasers who have timely submitted Qualified Bids shall be entitled to make bids at the Auction.

6. The sale proceeds shall be paid over to ACB at the Closing of the Sale.

7. No later than ten (10) business days prior to the Sale Hearing, the Debtor shall cause notice to be provided to all counter-parties (each, a "Counter-Party") to any executory contract or unexpired lease which the Debtor proposes to assume and assign as part of the Sale (the "Cure Notice"), along with a copy of the Sale Procedures. Each Cure Notice shall set forth the following information: (i) the name and last known address of the Counter-Party, (ii) notice of the proposed effective date of the assignment, (iii) identification of the applicable contract, and (iv) the amount, if any, determined by the Debtor necessary to cure any existing default pursuant to Bankruptcy Code section 365 ("Cure Amount").

8. Any party failing to file a timely objection to a Cure Amount or the assumption or assignment of the contract on or before November 14, 2012 at 5:00 p.m. shall be forever barred from objecting to such Cure Amount and from asserting any additional cure or other amounts against the Debtor, its estate, or the Successful Bidder with respect to its executory contract(s) or unexpired lease(s) and will be deemed to consent to the Sale and the proposed assumption and assignment of its executory contract(s) or unexpired lease(s). Only those executory contracts or unexpired leases which are specifically included in the Sale Order as being assumed and assigned shall be assumed and assigned to the Successful Purchaser.

9. The deadline to object to the Sale and the assumption and assignment of any executory contracts or unexpired leases and to any Cure Amount is November 14, 2012 at 5:00 p.m. (the "Objection Deadline") Objections or responses, if any, to the Sale shall (i) be in writing, (ii) state with specificity the nature of such objection; and (iii) be filed and served so that it is received by the following parties on or prior to the Objection Deadline: (i) Debtor's counsel, Crane, Heyman, Simon, Welch & Clar, 135 S. LaSalle St., Suite 3705, Chicago, Illinois 60603 Attn: Scott R. Clar; (ii) counsel to American Chartered Bank, c/o Fuchs & Roselli, Ltd., 440 W. Randolph St., #500, Chicago, IL 60606, Attn: Richard Perna; (iii) the Office of the U.S. Trustee, 219 S. Dearborn, Suite 873, Chicago, Illinois 60604, Attn: Gretchen Silver.

10. This Order shall become effective immediately upon its entry.

11. This Court shall retain jurisdiction over any matter or dispute arising from or relating to implementation of this Order.

Enter: *Donald R. Cassling*

United States Bankruptcy Judge

Dated: **- 1 NOV 2012**

Rev: 20120209_bko

**Prepared by:**

Scott R. Clar
(Atty. No. 06183741)
Crane, Heyman, Simon, Welch & Clar
135 South LaSalle Street, Suite 3705
Chicago, IL 60603
(312) 641-6777

# EXHIBIT A

# BIDDING PROCEDURES

     1.     The Debtor seeks the entry of an Order pursuant to 11 U.S.C. §§ 105 and 363 approving the following procedures for soliciting and accepting bids for the purchase of the Sale Assets and ("**Bidding Procedures**"):

- **Qualified Bid**. A proposal ("**Bid**") received from a potential purchaser ("**Potential Purchaser**") is a "**Qualified Bid**" if it:

  (i)     is received by the Bid Deadline (as defined below);

  (ii)     is accompanied by a proposed purchase and sale agreement in substantially the same form as the Asset Purchase Agreement attached hereto as **Exhibit 1**;

  (iii)     is not subject to any contingencies, due diligence or financing conditions or board or other approval;

  (iv)     is accompanied by a certified or bank check, payable to the Debtor's counsel, as escrowee, a good faith deposit of not less than $15,000 ("**Required Deposit**");

  (v)     includes written evidence of an unconditional commitment for financing (by a creditworthy bank or financial institution that shall provide such financing without alteration of conditions or delay) or other evidence of ability, as determined in the reasonable business judgment of the Debtor, to consummate the transaction; and

  (vi)     fully discloses the identity of each entity that will be bidding for the Sale Assets or otherwise participating in connection with such bid, and the complete terms of any such participation.

- **Bid Deadline**. A Potential Bidder that desires to make a Bid must deliver written copies of its offer, to (i) counsel for the Debtor and (ii) counsel for the ACB so that the Bid is actually received by 5:00 p.m. prevailing Central Time on November 19, 2012.

- **Auction Procedure**. The Debtor shall conduct an auction on November 21, 2012 at 10:00 a.m. (prevailing Central Time) (the "**Auction Date**") at the law offices of Crane, Heyman, Simon, Welch & Clar, 135 South LaSalle Street, Suite 3705, Chicago, Illinois 60603 (the "**Auction**"). Only API and any Qualified Bidders who have timely submitted Qualified Bids shall be entitled to make any bids at the Auction. Except for the API Bid, no Bids shall be considered by the Debtor from a Potential Purchaser unless such Potential Purchaser has submitted a Qualified Bid.

- **Bid Protection**. Any competing bids must be at least $10,000 in excess of the API Offer.

- **Break-up Fee**. In the event that API is not the successful purchaser, API shall be entitled to a $5,000 Break-up Fee.

- **Successful Bidder**. At the conclusion of the Auction, the Debtor in consultation with ACB shall identify the highest and best Bid (the "**Successful Bid**") and the Qualified Bidder making such Bid (the "**Successful Bidder**"). The Debtor shall promptly seek confirmation that such Qualified Bidder is the Successful Bidder and that such proposal is the Successful Bid at the hearing to be held before the Bankruptcy Court.

- **Return of Deposit**. All deposits, but excluding the Required Deposit of the Successful Bidder, shall be returned within three (3) business days after the closing of the Sale to the Successful Bidder.

- **No Representations or Warranties**. The Sale Assets shall be purchased on an "as is, where is" basis, with no representations or warranties (express or implied) of any kind or nature whatsoever, other than a representation and warranty as to title to the assets and such other customary and usual representations and warranties.

- **Bid may be for all or a portion of the assets**. Bids may be submitted for all portion of the assets and may be submitted for specific lots of assets.

- **Closing**. The closing shall take place at the offices of the Debtor's counsel at the address set forth below, the day after the entry of the Sale Order (as defined below) becomes final and non-appealable or such other earlier date as the parties may agree.

- **Sale Subject to Court Approval**. The sale contemplated herein shall be subject to the entry of an order by this Court (I) approving the sale and transfer of the Assets to the winning bidder, free and clear of any and all liens, claims, and encumbrances of any kind or nature whatsoever to the extent permitted by law (other than permitted liens agreed to by the parties), with any and all valid liens, claims and encumbrances attaching to the sales proceeds at closing and (ii) containing a finding that the purchaser is a good faith purchaser pursuant to Section 363(m) (the "Sale Order").

- **Assumption of Liabilities**. The purchaser shall not be obligated to assume or be responsible for any of the Debtor's liabilities or obligations existing as of the closing, excluding only (I) those liabilities and obligations of the Debtor which the successful purchaser specifically agrees in writing and in its sole discretion to assume, (ii) the Debtor's post-closing obligations under any equipment leases actually assigned to the purchaser.

# EXHIBIT 1

ASSET PURCHASE AGREEMENT

THIS ASSET PURCHASE AGREEMENT (the "Agreement") is made and entered into as of this 30th day of October, 2012 (the "Agreement Date"), by and between API Holdings & Management, LLC, an Illinois limited liability company (the "Buyer"), on the one hand, and Advance Presort Service, Inc., an Illinois corporation ("Advance"), the "Seller" and, together with Buyer, the "Parties"), Seller being a Debtor and Debtor in Possession under Case No. 12-19621 (the "Case") in the United States Bankruptcy Court for the Northern District of Illinois (the "Bankruptcy Court").

RECITALS

A.    Collectively, the Seller is in the business of printing and mailing for customers (the "Business").

B.    Seller wishes to sell to Buyer, pursuant to Sections 363 of Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"), substantially all of the assets of Advance the Business, at the price and on the other terms and conditions specified in detail below and Buyer wishes to so purchase and acquire such assets Seller.

C.    Terms that are capitalized but not defined herein shall have the meaning set forth on Exhibit "E".

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties agree as follows:

1. Transfer of Assets.

1.1    Purchase and Sale of Assets. On the Closing Date, as hereinafter defined, in consideration of the covenants, representations and obligations of Buyer hereunder, and subject to the conditions set forth in this Agreement, Seller shall sell, assign, transfer, convey and deliver (pursuant to Sections 363 and 365 of the Bankruptcy Code) to Buyer, free and clear of all Liens, and Buyer shall purchase from Seller, the Seller' right, title and interest as of the Closing Date in and to Seller' assets listed below (collectively, excluding the Excluded Assets (as defined in Section 1.2 below), the "Property.

L 1.1    Leases and Contracts. Each Seller's right, title and interest in and to (i) the lessee's interest under those equipment, personal property and intangible property leases, rental agreements, licenses, contracts, agreements and similar arrangements, if any, described on Schedule 1.1.1-(i) (collectively, the "Leases"), if any and (ii) those other contracts, leases, orders, purchase orders, licenses, contracts, agreements and similar arrangements described on Schedule 1.1.1-(ii) (collectively, the "Other Contracts" and together with the Leases, the "Leases and Contracts").

1.1.2    Personal Property. The property shall consist of (a) all assets of Advance, except for Excluded Assets, their trademarks, trade names and service marks,

and all of their Intangible Property, their trademarks, trade names, service marks, websites, URLs, copyrights and trade secrets, together with their, all of which shall be listed on Schedule 1.1.2. The property of Advance shall include all of its furniture, vehicles, machinery, equipment, tools, spare parts, computers, fixtures and furnishings and other items of tangible personal property (collectively, the "Personal Property"). The Personal Property shall exclude any equipment or other tangible property held by any Seller pursuant to a lease, rental agreement, contract, license or similar arrangement (a "Contract") which Buyer does not assume.

       1.1.3   Intangible Property. All Intangible Property with regard to Seller shall include all books, records and like items pertaining to the Business, the goodwill of the Business, patents, processes, trademarks, brand names, websites, service marks, copyrights, designs (all of the foregoing, whether registered or unregistered), all good will associated thereon, catalogues, customer lists and other customer data bases, correspondence with present or prospective customers and suppliers, advertising materials, software programs and data stored in Seller' computers, and telephone exchange numbers and facsimile numbers, domain names, URL addresses, identified with the Business and any right, title and interest of Seller in and to those items described on Schedule 1.1.3, except the Buyer is not purchasing the Seller's Accounts Receivable which shall Buyer shall collect for the benefit of Seller's estate as further set forth in Paragraph 1.2 hereafter. Intangible Property shall exclude (i) any materials containing privileged communications or other information about employees, disclosure of which would violate an employee's reasonable expectation of privacy and any other materials which are subject to attorney-client or any other privilege or precluded from disclosure by applicable law, and (ii) any software or other item of intangible property held by Seller pursuant to a license or other Contract that Buyer is not assuming.

       1.1.4   Governmental Permits. To the extent transferable and assignable, each Seller's interest in all licenses, certificates of occupancy, permits, registrations, certificates of public convenience and necessity, approvals, licenses, easements, authorizations and operating rights, if any, issued or granted by any governmental or similar authority having jurisdiction over the Business to the extent relating primarily to the operation of the Business, including those described on Schedule 1.1.4 (collectively, the "Permits and Licenses").

       1.1.5   Seller's Vendor Items. All promotional allowances and vendor rebates and deposits and similar items relating to the Business, if any (collectively, the "Vendor-Related Assets").

       1.1.6 Claims, Etc. All claims, prepayments, deposits, warranties, guarantees, refunds, reimbursements, causes of action, rights of recovery, rights of set-off and rights of recoupment related to Advance's customers, to the extent specifically listed or described on Schedule 1.1.7 (collectively, the "Claims").

       1.1.7   Certain Insurance Rights. Seller' rights under insurance policies to the extent they cover Assumed Liabilities, or if the policies may not be assigned or transferred, the proceeds of any claims made thereunder to the extent relating to the foregoing.

1.2     Excluded Assets. Notwithstanding anything to the contrary in this Agreement, the Property shall exclude (collectively, the "Excluded Assets"): (i) Seller' rights under this Agreement and all cash and non-cash consideration payable or deliverable to Seller pursuant to the terms and provisions hereof; (ii) except only as described on Schedule 1.1.7 hereto, only all cash deposits and prepaid items applied or which can be applied to completed orders; (iii) all cash and cash equivalents (including checking account balances, certificates of deposit and other time deposits and petty cash) and marketable and other securities relating to or arising in connection with the operation of the Business, (iv) all tax refunds, rebates, credits and similar items relating to or arising out of the operation of the Business and to any period, or portion of any period, on or prior to the Closing Date; (v) all insurance proceeds (including, without limitation, any insurance policies held by any Seller which insure the directors and officers of the Seller against liability and any and all proceeds of any such insurance policies), claims and causes of action other than those described in Section 1.1.7 above; (vi) any Lease or Other Contract to which any Seller is a party which is not listed or described on Schedule 1.1.1-(i) and Schedule 1.1.1-(ii) and any Lease or Other Contract that is not assumable and assignable as a matter of applicable law (including any with respect to which any consent requirement in favor of the counter-party thereto may not be overridden pursuant to Section 365 of the Bankruptcy Code) (collectively, "Excluded Contracts"), (vii) all securities, whether capital stock or debt, of any Seller; (viii) all tax records, minute books, stock transfer books and corporate seal of each Seller; (ix) any letters of credit or similar financial accommodations issued to any third party(ies) for the account of any Seller and any collateral therefor and other collateral deposits and prepaid items associated with the Property; (x) except only as described on Schedule 1.1.7 hereto, all rights, claims and causes of action of Seller against any person or entity including without limitation any former officers, directors, employees, members, principals, agents, and representatives of any Seller, including, without limitation, any and all claims asserted by third parties against such persons which may result in the payment of proceeds to any Seller; (xi) all preference or avoidance claims and actions of any of the Seller, including, without limitation, any such claims and actions arising under Sections 544, 547, 548, 549, and 550 of the Bankruptcy Code; (xii) all rights, claims and causes of action of any Seller asserted or which may hereafter be asserted in any of the litigation proceedings described on Schedule 1.2(xiii); and (xiii) those additional assets, if any, listed on Schedule 1.2(xiv) Seller's accounts receivable which Buyer's agree to collect upon for the benefit of Debtor's estate for a commission of five percent (5%) and upon which Buyer shall have rights to the extent set forth in Paragraph 2.1. hereafter.

1.3     Instruments of Transfer. The sale, assignment, transfer, conveyance and delivery of the Property to Buyer shall be made by assignments, bill of sale, and other instruments of assignment, transfer and conveyance provided for in Section 3 below and such other instruments as may reasonably be requested by Buyer to transfer, convey, assign and deliver the Property to Buyer, but in all events only to the extent that the same do not impose any monetary obligations upon Seller or in any other respect increase in any material way the burdens imposed by the other provisions of this Agreement upon Seller, or any of them.

2. Consideration.

2.1     Purchase Price. The cash consideration to be paid by Buyer to Seller for the Property (the "Purchase Price") shall be Two Hundred Thousand Dollars ($200,000.00) plus or minus prorations or adjustments at Closing, if any.

3

2.2     Deposit.

2.2.1 Concurrently with the mutual execution and delivery of this Agreement (the date of such mutual execution and delivery is sometimes referred to herein as the "Execution Date"), Buyer shall, pursuant to a separate escrow agreement, deposit into an escrow account (the "Escrow") with Seller's counsel (the "Escrow Holder") Seller Fifteen Thousand Dollars ($15,000.00) (the "Deposit") in immediately available funds. Escrow Holder shall immediately deposit the Deposit into an interest-bearing account.

2.2.2 Upon the termination of this Agreement for any reason other than termination by Seller pursuant to Section 9.1.6(B), the Parties shall instruct the Escrow Holder to immediately refund the Deposit, together with all interest earned thereon, to Buyer. The Deposit shall become nonrefundable upon the termination of this Agreement by Seller pursuant to Section 1 0.1.6(B). Upon such termination pursuant to Section 9.1.6(B), the Parties shall instruct the Escrow Holder to immediately disburse the Deposit and all interest accrued thereon to Seller to be retained by Seller for their own account. In the event of a dispute with regard to whether the Deposit is to be disbursed, it shall continue to be held by the Escrow Holder, who shall not be precluded from acting as counsel for any of the parties involved in the dispute.

2.2.3 The Deposit (and any accrued interest thereon) shall be credited at Closing and applied against amounts due and owing to Seller.

2.3     Buyer shall have the right to the use and occupancy of the premises presently occupied by the Seller at 4258 N. Knox A venue, Chicago, Illinois 60641 (the "Premises")for a period of four (4) months following the Closing of the Sale. The Buyer shall pay a monthly the sum of $12,000.00 commencing on the 31st day after Closing.   The Buyer shall provide property insurance in an amount acceptable to owner naming American Chartered Bank as Mortgagee.Loss Payee. The Buyer shall be responsible for all utility and maintainence fees. The Buyer shall maintain the building in the condition in which it received possession ("Pre-Occupancy Condition") and return the building to the Pre-Occupancy Condition upon vacating the premises.   After the expiration of the four month occupancy period, the Buyer may continue to occupy the premises upon the payment of the same monthly amount on a month to month basis. After the four months of Buyer's right to use and occupy the premises or the occurrence of a sale or foreclosure of the Premises, whichever is earlier, either party may terminate the Buyer's right to the continued use and ccupy the premises upon thirty(30) days' notice to the other party. In the event Buyer fails to pay rent at any time when due under this Agreement or expiration of thirty (30) days from notice provided in the previous sentence, Seller, may, upon five (5) days' notice, prosecute eviction proceedings against the Buyer to obtain possession of the Premises.

2.4     Assumed Liabilities.

2.4.1. Effective as of the Closing Date, Buyer shall assume the following liabilities and obligations of Seller: (i) all obligations of Seller arising or accruing after Closing under the Leases and Contracts assumed by Buyer at the Closing, (ii) any of Seller's additional liabilities and obligations as may be set forth or described on Schedule 2.4.1-(vii) hereto (collectively, the "Assumed Liabilities").

2.5     [Intentionally Omitted]

2.6     [Intentionally Omitted]

2.7     [Intentionally Omitted]

2.8    Closing Transactions.

2.8.1 Closing. The Closing of the transactions provided for herein (the "Closing") shall take place at such place or places as the Parties may mutually agree upon.

2.8.2 Closing Date. The date of the Closing (the "Closing Date") shall be held upon the second (2nd) Business Day following the satisfaction of the last of the conditions set forth in Sections 3.1 and 3.2 below, but no later than November 30,2012 and then only if the Buyer is willing to close during the pendency of any time to appeal

2.9    Seller' Deliveries to Buyer at Closing. On the Closing Date, Seller shall deliver to Buyer:

2.9.1 An Assignment and Assumption of Leases and Contracts substantially in the form and content attached as Exhibit "A" hereto, duly executed by Seller pursuant to which each Seller shall assign to Buyer such Seller's respective interest in the Leases and Contracts (the "Assignment of Leases").

2.9.2 A Bill of Sale and Assignment, duly executed by Seller in the form and on the terms of the bill of sale attached hereto as Exhibit "B, „ pursuant to which each Seller transfers and assigns to Buyer such Seller's right, title and interest in and to the Personal Property (the "Bill of Sale").

2.9.3 A counterpart Assignment of Intangible Property, duly executed by Seller, in the form and content of the assignment of intangible property attached as Exhibit "C" hereto, pursuant to which each Seller assigns to Buyer such Seller's interest, if any, in and to the Intangible Property (the "Assignment of Intangible Property").

2.9.4 Possession and control of the Property, free and clear of all Liens to the extent provided in the Approval Order, excluding, in all events, Buyer's obligations under this Agreement.

2.9.5 A copy of the Approval Order authorizing and approving the execution and delivery and performance of this Agreement, all other documents contemplated herein and the transactions contemplated hereby and thereby and the acts of the officers of Seller in carrying out the terms and provisions hereof.

2.9.6 Any consents, approvals and authorizations of third parties that are necessary, including authorization by the Bankruptcy Court, for the execution, delivery and consummation of this Agreement, but specifically excluding any such consents, approvals and/or authorizations the need for which is obviated by the entry of the Approval Order.

2.9.7 A counterpart Assumption of Liabilities with respect to the Assumed Liabilities, in the form and content attached as Exhibit "D" duly-executed by Seller (the "Assumption of Liabilities").

2.9.8 Any such other documents, funds or other things reasonably contemplated by this Agreement to be delivered by Seller to Buyer at the Closing.

S

2.10 <u>Buyer's Deliveries to Seller at Closing.</u> On the Closing Date, Buyer shall make or cause the following deliveries to Seller or the Escrow Holder, as applicable:

2.1 0.1 Payment of the Purchase Price

2.10.2 A counterpart of the Assignment of Leases, duly executed by Buyer.

2.10.3 A counterpart to the Assumption of Liabilities, duly executed by Buyer.

2.10.4 Any such other documents, funds or other things reasonably contemplated by this Agreement to be delivered by Buyer to Seller at the Closing.

2.11    Set off for Deposits, Prorations and Credits. **Schedule 2.11** is a list of all deposits that have been received by Advance prior to Closing with regard to the Purchased Assets which have not been delivered. All credits due Buyer at Closing shall not reduce the Purchase Price nor in anyway effect Buyer's obligation to tender the Purchase Price at closing but shall be paid by Seller from Seller's cash accounts or accounts receivable as collected or if Seller does not have the funds to pay at closing shall be set off against the collection of Seller's accounts receivable to the extent of such amount as will be determined at Closing and agreed by Seller and Buyer.

2.12    <u>Sales, Use and Other Taxes.</u> Any sales, purchase, transfer, stamp, documentary stamp, use or similar taxes under the laws of the states in which any portion of the Property is located, or any subdivision of any such state, or under any federal law or the laws or regulations of any federal agency or authority, which may be payable by reason of the sale or transfer of the Property under this Agreement or the transactions contemplated herein shall be disclosed to Buyer at least two (2) business days before Closing and borne by and paid by Buyer. Notwithstanding the foregoing, Buyer shall not be liable and shall not assume any liabilities to any taxing bodies or governmental entities relating to activities of Seller prior to Closing.

2.1.3 <u>Possession.</u> Right to possession of the Property shall transfer to Buyer on the Closing Date. Seller shall transfer and deliver to Buyer on the Closing Date.

<u>Conditions Precedent to Closing.</u>

2.2    <u>Conditions to Seller' Obligations.</u> Seller' obligation to make the deliveries required of Seller at the Closing Date and otherwise consummate the transaction contemplated herein shall be subject to the satisfaction or waiver by Seller of each of the following conditions:

2.2.1 All of the representations and warranties of Buyer contained herein shall continue to be true and correct at the Closing in all material respects.

6

2.2.2 Buyer shall have executed and delivered to Seller the Assignment of Leases and the Assumption of Liabilities.

2.2.3 Buyer shall have delivered, or shall be prepared to deliver to Seller at the Closing, all cash and other documents required of Buyer to be delivered at the Closing.

2.2.4 Buyer shall have delivered to Seller evidence (in form and content reasonably satisfactory to Seller) of all necessary entity action by Buyer in connection with the transactions contemplated hereby, including, without limitation: (i) certified copies of resolutions duly adopted by Buyer's manager and/or board of directors approving the transactions contemplated by this Agreement and authorizing the execution, delivery, and performance by Buyer of this Agreement; and (ii) a certificate as to the incumbency of those managers and/or officers of Buyer executing this Agreement and any instrument or other document delivered in connection with the transactions contemplated by this Agreement.

2.2.5 No action, suit or other proceedings shall be pending before any court, tribunal or governmental authority seeking or threatening to restrain or prohibit the consummation of the transactions contemplated by this Agreement, or seeking to obtain substantial damages in respect thereof, or involving a claim that consummation thereof would result in the violation of any law, decree or regulation of any governmental authority having appropriate jurisdiction.

2.2.6 Buyer shall have substantially performed or tendered performance of each and every material covenant on Buyer's part to be performed which, by its terms, is required to be performed at or before the Closing.

2.2.7 The Bankruptcy Court shall have entered an order in substantially the form attached hereto as **Exhibit** *"F"* (the "Approval Order") and the Approval Order shall not have been stayed as of the Closing Date.

2.3      Conditions to Buyer's Obligations. Buyer's obligation to make the deliveries required of Buyer at the Closing and otherwise consummate the transaction contemplated herein shall be subject to the satisfaction or waiver by Buyer of each of the following conditions:

2.3.1 Seller shall have substantially performed or tendered performance of each and every covenant on Seller' part to be performed which, by its terms, is required to be performed or capable of performance at or before the Closing.

2.3.2 All of the representations and warranties of Seller contained herein shall continue to be true and correct at the Closing in all material respects.

2.3.3 Seller shall have executed and be prepared to deliver to Buyer the Assignment of Leases, the Assumption of Liabilities, the Bill of Sale, and the Assignment of Intangible Property.

2.3.4 Seller shall have delivered, or shall be prepared to deliver to Buyer at the Closing, all other documents required of Seller to be delivered at the Closing.

2.3.5 No action, suit or other proceedings shall be pending before any court, tribunal or governmental authority seeking or threatening to restrain or prohibit the consummation of the transactions contemplated by this Agreement, or involving a claim that consummation thereof would result in the violation of any law, decree or regulation of any governmental authority having appropriate jurisdiction.

2.3.6 The Bankruptcy Court shall have entered the Approval Order and the Approval Order shall have become a Final Order, and the Auction shall have taken place on or before November 16, 2012.

2.3.7    The Leases and Contracts Buyer has agreed to assume at the Closing (whether by virtue of the effect of the Approval Order rendering consent to assignment unnecessary or by virtue of written consents to assignment obtained from the applicable counterparties) shall include all of the Leases and Contracts described on **Schedule 3.2.7**, provided, however, to the extent that any Lease or Contract described on Schedule 3.2.7 cannot be assigned to Buyer at the Closing solely because the Bankruptcy Court has determined that Buyer has failed to demonstrate "adequate assurance of future performance" as to that Lease or Contract pursuant to Section 365 of the Bankruptcy Code, then Schedule 3.2.7 shall automatically be deemed amended to eliminate such Lease or Contract (collectively, **"Dropped Contracts"**) and Buyer and Seller shall proceed as though Seller's interest in such Dropped Contracts had never been part of the Property or the transactions contemplated herein.

2.38     Waiver of Condition. Any waiver of a condition shall be effective only if such waiver is stated in writing and signed by the waiving Party; provided, however, that the consent of a Party to the Closing shall constitute a waiver by such Party of any conditions to Closing not satisfied as of the Closing Date.

3. Seller' Representations and Warranties. Seller hereby makes (each as to themselves only) the following representations and warranties to Buyer:

3.1     Organization, Standing and Power. Seller is duly organized, validly existing and in good standing under the laws of the states of their respective organization set forth in the preamble to this Agreement. Seller have all requisite entity power and authority to own, lease and, subject to the provisions of the Bankruptcy Code applicable to debtors in possession, operate its properties, to carryon Seller' business as now being conducted. Subject to entry of the Approval Order, Seller has the power and authority to execute, deliver and perform this Agreement and all writings relating hereto.

3.2     Validity and Execution. This Agreement has been duly executed and delivered by Seller and, upon entry of the Approval Order, will constitute the valid and binding obligation of Seller enforceable against it in accordance with its terms, except as may be limited by any bankruptcy, insolvency, reorganization, moratorium, fraudulent transfer or other laws (whether statutory, regulatory or decisional), now or hereafter in effect, relating to or affecting

8

the rights of creditors generally or by equitable principles (regardless of whether considered in a proceeding at law or in equity).

3.3    No Conflict.    Subject to the entry of the Approval Order, the consummation of the transactions herein contemplated, and the performance of, fulfillment of and compliance with the terms and conditions hereof by Seller do not and will not: (i) conflict with or result in a breach of the articles of incorporation, by-laws or operating agreement, as applicable, of Seller; (ii) violate any statute, law, rule or regulation, or any order, writ, injunction or decree of any court or governmental authority, or (iii) violate or conflict with or constitute a default under any agreement, instrument or writing of any nature to which any Seller is a Party or by which Buyer or its assets or properties may be bound.

3.4    Litigation. Except for the Case and as set forth on **Schedule 4.4** hereto, to Seller' Knowledge (which, for purposes of this Agreement means and refers only to the actual knowledge of Dennis MacHarg after reasonable inquiry), there is no material Litigation or investigation pending or threatened against or affecting the Property, before any court, arbitrator or governmental authority. To Seller' Knowledge, except for the Case, Seller are not subject to any outstanding Litigation or Order, which, individually or in the aggregate, would prevent, or materially delay Seller from consummating the transactions contemplated by this Agreement, or which would be pursuant to its terms binding on Buyer or the Property.

3.5    No Other Agreements to Purchase. Seller have not entered into any agreement with any other Person (written or oral) which grants such third party the right or option purchase or acquire from Seller any of the Property, other than purchase orders for Inventory accepted by Seller in the ordinary course of business, consistent with past practice.

3.6    Financial Advisors. No Person has acted, directly or indirectly, as a broker, finder or financial advisor for the Seller in connection with the transactions contemplated by this Agreement, and no Person is entitled to any fee or commission or like payment from the Buyer or the Seller in respect thereof, in each case other than as set forth on **Schedule** 4.7. In any event, Buyer shall not be liable for any broker's commissions, finder fees or success fees of the Seller.

3.7    Seller has received no threats, notices or other claims that any of its trademarks, copyrights, service marks or Products infringe the rights of any third party.

4. Buyer's Warranties and Representations. In addition to the representations and warranties contained elsewhere in this Agreement, Buyer hereby makes the following representations and warranties to Seller:

4.1    Organization, Standing and Power.    Buyer is a limited liability company duly organized, validly existing and in good standing under the laws of Illinois. Buyer has all requisite entity power and authority to own, lease and operate its properties, to carryon its business as now being conducted and to execute, deliver and perform this Agreement and all writings relating hereto. Buyer has the power and authority to execute, deliver and perform this Agreement.

9

4.2    <u>Validity and Execution</u>. This Agreement has been duly executed and delivered by Buyer and constitutes the valid and binding obligation of Buyer enforceable against it in accordance with its terms, except as may be limited by any bankruptcy, insolvency, reorganization, moratorium, fraudulent transfer or other laws (whether statutory, regulatory or decisional), now or hereafter in effect, relating to or affecting the rights of creditors generally or by equitable principles (regardless of whether considered in a proceeding at law or in equity).

4.3    <u>No Conflict</u>.    _The execution, delivery-and performance of this Agreement and all writings relating hereto by Buyer have been duly and validly authorized. The execution and delivery of this Agreement, the consummation of the transactions herein contemplated, and the performance of, fulfillment of and compliance with the terms and conditions hereof by Buyer do not and will not: (i) conflict with or result in a breach of the certificate of formation or operating agreement of Buyer or, if applicable, other organizational documents or agreements of Buyer; (ii) violate any statute, law, rule or regulation, or any order, writ, injunction or decree of any court or governmental authority; or (iii) violate or conflict with or constitute a default under any agreement, instrument or writing of any nature to which Buyer is a party or by which Buyer or its assets or properties may be bound.

4.4    <u>Litigation</u>. To Buyer's knowledge, there is no material Litigation or investigation pending or threatened against or affecting the Buyer, before any court, arbitrator or governmental authority which, individually or in the aggregate, would prevent, or materially delay Buyer from consummating the transactions contemplated by this Agreement.

4.5    <u>Financial Capability</u>. Buyer (i) has, or has firm commitments for, as of the date hereof, and will have as of the Closing, sufficient funds to pay the Purchase Price and to assume the Assumed Liabilities, (ii) has, as of the date hereof, and will have as of the Closing, the resources and capabilities (financial or otherwise) to perform its obligations hereunder and (iii) has not, as of the date hereof, and will not have as of the Closing, incurred any obligation, commitment, restriction or liability of any kind which would impair or adversely affect such resources and capabilities.

5.    <u>"AS IS" Transaction</u>. Buyer hereby acknowledges and agrees that, except only as provided in Section 4 above, Seller makes no representations or warranties whatsoever, express or implied, with respect to any matter relating to the Property (including, without limitation, income to be derived or expenses to be incurred in connection with the Property, the physical condition of the Personal Property or Inventory, the environmental condition or other matter relating to the physical condition of any of the Property, the value of the Property (or any portion thereof), the transferability of the Property or any portion thereof, the terms, amount, validity, collectability or enforceability of the Accounts Receivable or any Assumed Liabilities or Lease or Contract, the merchantability or fitness of the Personal Property, the Inventory or any other portion of the Property for any particular purpose, whether the assignment of any Lease or Contract without the consent of the counterparties thereto or any Lease or Contract would constitute a breach or default under such Lease or Contract). Without in any way limiting the foregoing, Seller hereby disclaims any warranty (express or implied) of merchantability or fitness for any particular purpose as to any portion of the Property. Buyer further acknowledges that Buyer has conducted an independent inspection and investigation of the physical condition

10

of all portions the Property and all such other matters relating to or affecting or comprising the Property and or the Assumed Liabilities (including, without limitation, those matters, if any, disclosed to Buyer pursuant to Schedule 6 attached hereto and incorporated herein by this reference) as Buyer deemed necessary or appropriate and that in proceeding with its acquisition of the Property, Buyer is doing so based solely upon such independent inspections and investigations. Accordingly, Buyer will accept the Property at the Closing "AS IS," "WHERE IS," and "WITH ALL FAULTS."

6. Books and Records of Seller.

6.1    Seller shall provide Buyer and Buyer's counsel, accountants, lenders, employees and other representatives, during normal business hours from the Agreement Date -until the Closing Date, reasonable access to the personnel, facilities, customers, vendors, all of the Acquired Assets and all of the liabilities of Seller, including the organizational books and records of Seller; provided, however, such access shall not materially interfere with the ongoing business operations of Seller, and such access shall not include privileged communications, confidential information or information about any employee, the disclosure of which might violate such employee's reasonable expectation of privacy or applicable law.

7. Other Covenants of the Parties.

7.1    Bankruptcy Court Approval.

7.1.1 Seller and Buyer acknowledge that under the Bankruptcy Code, this Agreement and the sale of the Property are subject to Bankruptcy Court approval. Seller and Buyer acknowledge and agree that in order to obtain such approval, Seller must demonstrate that they have taken reasonable steps to obtain the highest and best price possible for the Business, including giving notice of the transactions contemplated by this Agreement to creditors and other interested parties as ordered by the Bankruptcy Court, providing information about the Business to responsible bidders, entertaining higher and better offers from responsible bidders and conducting an auction.

7.1.2 To facilitate the foregoing, promptly following the Agreement Date (but no later than three (3) business days thereafter), Seller shall file a motion, in the form and substance reasonably satisfactory to Buyer (the "Bidding Procedures and Sale Motion") with the Bankruptcy Court, together with appropriate supporting papers and notices, seeking, among other things, the entry of (A) an order, in the form and substance attached as Exhibit "G" hereto and incorporated herein by this reference, setting forth the procedures for the conduct of an auction (the "Auction") to solicit overbids for the Property (the "Bidding Procedures Order") and (B) if (1) there are no other bids at, or prior to, the Auction described therein, or (2) after all such bids at, or prior to, such Auction, Buyer's final bid is determined to be the highest or otherwise best bid, the Approval Order.

7.1.3 From the Agreement Date until the earlier of (A) the Closing, and (B) the termination of this Agreement, Seller may inform any and all interested third

11

parties that they intend to submit this Agreement to the Bankruptcy Court in order to obtain entry of the Bidding Procedures Order and the Approval Order.

7.2    Other Filings. Seller and Buyer shall, if required in connection with the transactions contemplated hereby, (i) promptly take all actions necessary to make the filings required of it or its affiliates by any governmental or quasi-governmental entities (domestic and foreign), (ii) comply at the earliest practicable date with any request for additional information received by it or its affiliates from any governmental or quasi-governmental entities (domestic or foreign), (iii) cooperate with the other Parties in connection with resolving any investigation or other inquiry concerning the transactions contemplated by this Agreement commenced by state attorneys general, and (iv) cooperate with the other Parties in connection with any other Party's filing, (other than as provided for in subsection (iii) above) as may be required by any governmental or quasi-governmental entities (domestic or foreign). All fees required to be paid in connection with any filings hereunder shall be borne by the Party incurring such expense.

7.3    Confidentiality. Following the Closing, Seller shall maintain, and shall cause those of their respective Affiliates over whom Seller have control to maintain, unless disclosure is required by applicable law, the confidentiality of any information in the nature of trade secrets of the Business or other information that Seller treated as proprietary in the ordinary course of their businesses (collectively, "Proprietary Information"), which is in Seller' or any of such respective Affiliates' possession or control. While they remain in existence, Seller shall, unless disclosure is required by applicable law or is otherwise necessary for Seller to effect their reorganization, to take all appropriate steps, consistent with Seller' past practice, and to cause each of such respective Affiliates to take all reasonable steps taking into account Seller's financial condition and circumstances (and specifically excluding any obligation to initiate, pursue or defend any action or proceeding of any kind in connection with the enforcement of any rights in connection therewith against any third party, except that Buyer may elect to do so at its expense) to safeguard the Proprietary Information and to protect it against disclosure, misuse, espionage, loss and theft. In furtherance and not in limitation of the foregoing, Seller shall not, and shall cause such Affiliates not to, unless required by applicable law, disclose to any Person any Proprietary Information regarding the Business, provided, that Proprietary Information shall not include information that becomes generally available to the public other than as a result of the breach of this Section 8.3 or information not otherwise known by the Seller that becomes available to any Seller from a Person other than Buyer, provided, that Seller shall be entitled to disclose (i) any information required or reasonably believed by the Seller to necessarily be disclosed by Seller to the Bankruptcy Court, the United States Trustee, parties in interest in the Case or other Persons bidding on assets of Seller, (ii) any information required to be disclosed by Seller pursuant to any applicable law (including, without limitation, the Bankruptcy Code), legal proceeding or governmental authority, or (iii) any information to Seller' counsel and financial advisor; provided, that, in each case, such disclosure shall be limited to the information that is so required or appropriate to be disclosed and the Person(s) to whom such disclosure is required. In the event Buyer is not the successful bidder for the Purchased Assets, Buyer agrees that any information disclosed to Buyer shall be at Seller's option, either returned to Seller or destroyed.

7.4    Schedules. Seller shall deliver a preliminary draft of all schedules referenced in this Agreement not later than fifteen (15) days following the execution of this Agreement by the parties. The parties shall agree upon the final draft of such schedules not later than five (5) business days prior to the Auction.

12

8. <u>Employee Matters</u>.

9.1     Prior to the Closing, Buyer may offer to employ, commencing immediately following the Closing, a sufficient number of all employees of Seller (at salaries and compensation levels and on terms and conditions of employment applicable to their employment as determined by Buyer). Such employees who become employees of Buyer shall be collectively referred to as the "Transferred Employees. "

9. <u>Seller's Termination</u>.

9.1     <u>Optional Termination</u>. This Agreement may be terminated at any time prior to the Closing Date:

9.1.1 by Buyer, if Seller shall not have filed the Bidding Procedures and Sale Motion in the Bankruptcy Courtby October 30,2012;

9.1.2 by Buyer or Seller, if either (A) the Bankruptcy Court hearing on Seller' motion seeking entry of the Bidding Procedures Order is not held within seven (7) days of the date hereof or (B) the Bankruptcy Court has not entered the Bidding Procedures Order within ten business days] following such hearing;

9.1.3 by Buyer or Seller, if either (A) the Bankruptcy Court hearing on Seller' motion seeking entry of the Approval Order is not held within seven (7) days following the auction described in the Bidding Procedures Order or (B) the Bankruptcy Court has not entered the Approval Order within ten L 10-> business days] following such hearing;

9.1.4 by Buyer or Seller, if the Closing shall not have occurred by the close of business on the date that is four (4) business days after the Auction (the "Outside Date"); provided, that if the Closing shall not have occurred on or before the Outside Date due to (ii) a breach of any material representations, warranties, covenants or agreements contained in this Agreement by a party hereto, then such party may not terminate this Agreement pursuant to this Section 10.1.4, and (ii) Buyer's requirement that the Approval Order become a Final Order and the appeal period with respect thereto has not yet run, then neither Buyer nor Seller shall have the right to terminate, it being expressly understood that (xx) nothing herein shall be deemed to alter or waive any condition to Buyer's or Seller's obligations to close set forth elsewhere in this Agreement, and (yy) the Outside Date shall be extended to the date which is three (3) business days following expiration of such appeal period;

9.1.5 by Seller and Buyer by mutual written consent;

*9.1.6 (A)* by Buyer, in the event of a Seller Material Breach; <u>provided</u>, that Buyer shall not have the right to terminate this Agreement under this Section 9.1.6(A) at a time when Seller have (or would have after the passage of time ((without regard to whether any required notice has actually been given)) the right to terminate this Agreement due to a Buyer Material Breach, and (B) by Seller, in the event of a Buyer Material Breach; <u>provided</u>, that Seller shall not have the right to terminate this Agreement under this Section 9.1.6(8) at a time when

13

Buyer has (or would have after the passage of time (without regard to whether any required notice has actually been given» the right to terminate this Agreement due to Seller's Material Breach;

9.1. 7 by Seller if the Bankruptcy Court shall have entered an Order approving an Alternative Transaction, and by Buyer in the event that (i) an Alternative Transaction is approved by the Bankruptcy Court, and (ii) the transactions contemplated herein have not been consummated by the Outside Date, it being agreed that unless Seller have theretofore terminated this Agreement as provided above, this Agreement shall constitute a "back-up bid" following approval of an Alternative Transaction which shall remain open for acceptance by Seller and consummation by the Parties up to and including the Outside Date, but subject and subordinate in all respects to the rights of the purchaser in the Alternative Transaction;

9.1.8 [Intentionally Omitted]

9.1.9 by Buyer, if the DIP Lender or its Affiliates, or any successor to DIP Lender or its Affiliates holding a lien on Seller' assets 'shall have become a Qualified Bidder within the meaning of the Bidding Procedures Order (but only to the extent such bid provides for payment of the Purchase Price by means of a credit bid); provided, however, Buyer shall not have the right to terminate this Agreement pursuant to this Section 10.1.9, (i) regardless of whether the DIP Lender or any of its Affiliates bids in cash or credit bids, in the event that prior to the Auction, the terms of this Agreement have changed in any material respect adverse to Seller, and (ii) by reason of any credit bid made by the DIP Lender or any of its Affiliates so long as that credit bid is offered and submitted solely as and to be a "back-up bid" to the prevailing bid at the Auction;

9.1.10 by Buyer, upon the conversion of the Case to a Chapter 7 liquidation, the dismissal of the Case, or the appointment of a trustee or examiner with extended powers; or

9.1.1 1 Seller, by written notice to the other Parties if there shall be in effect an order of a governmental authority of competent jurisdiction restraining, enjoining or otherwise prohibiting the consummation of the transactions contemplated hereby, or the Bankruptcy Court or another court of competent jurisdiction shall stay the Approval Order.

9.2    Notice of Termination. Notice of termination of this Agreement pursuant to Section 10.1 shall be given bv the Party or Parties so terminating to the other Parties in writing in accordance with Section 12.2.

9.3    Effect of Termination. Upon termination of this Agreement, the Parties may abandon the transactions contemplated hereby and, to the extent practicable, shall withdraw all filings, applications and other submissions made pursuant to the transactions contemplated hereby from the governmental authority or Person to which made. Except as otherwise provided in this Section] 0.4, upon termination of this Agreement, this Agreement shall cease to have any force or effect and the Parties under this Agreement shall cease to have any further obligations or

14

liabilities under this Agreement. Notwithstanding the foregoing, all rights and obligations of any Party pursuant to Section 2.3.1, Section 2.3.2 and Section 11 hereof shall survive such termination unimpaired.

10.    Break-Up Fee and Bid Protection

10.1 Buyer's negotiation and execution of this Agreement has required an investment of time and a commitment of financial and other resources by Buyer, and that the negotiation and execution of this Agreement have provided value to Seller. Therefore, unless this Agreement has been terminated by Seller pursuant to a Buyer Material Breach (in which event Buyer shall not be entitled to a Break-Up Fee (as defined below), if any Break-Up Fee Event (as defined below) occurs, Seller shall payor cause Buyer to be paid cash an amount equal to Five Thousand Dollars ($5,000) (the "Break-Up Fee"), to the extent provided in Section 11.2.

10.2 11.1.1  The obligations of the Buyer are expressly subject to it receiving bid protection at the Auction of as the Stalking Horse Buyer in the sum of Ten Thousand Dollars ($10,000), so that at any bidder must offer not less than Two Hundred and Ten Thousand Dollars   ($210,000.)

10.3 Seller' obligation to pay the Break-Up Fee shall be subject to the entry of the Bidding Procedures Order. The Break-Up Fee shall be due and payable (i) in the case of a "Break-Up Fee Event", within five (5) business days following the closing of the Alternative Transaction, solely from the proceeds of such Alternative Transaction, (ii) in the case of an event described in clause (B) of the definition of "Break-Up Fee Event," within five (5) business days following the consummation of such Chapter 11 Plan. For the avoidance of doubt, no Break-Up Fee shall become due and payable unless and until an Alternative Transaction is closed or a Chapter 11 Plan is consummated. When due and payable to Buyer as provided in this Section 11.2, the Break-Up Fee shall be paid in immediately available funds and without need for further Order of the Bankruptcy Court (other than the Bidding Procedures Order).

10.4 As used in this Agreement:

"Alternative Transaction" means any agreement or transaction which involves the sale (in a single transaction or a series of transactions) of all or substantially all of the Property (as a going concern), or the issuance or sale (in a single transaction or a series of transactions) of all or substantially all of the equity interests, of Seller or any of their successors, to any Person other than Buyer or a designee of Buyer, or filing of a Chapter 11 Plan of Reorganization. For the avoidance of doubt, the disposition of the Property in liquidation, whether pursuant to a Chapter 7 proceeding or a Chapter 11 liquidating plan (a "Liquidating Plan") or otherwise, shall not be deemed to be an "Alternative Transaction" for purposes of this Agreement.

"Break-Up Fee Event" means any of the following events (but only the following events); (A) the entry by the Bankruptcy Court of any Order approving any Alternative Transaction, except following any termination hereof by reason of a Buyer's Material Breach hereunder or any termination pursuant to Sections 10.1.3, 10.1.4, 10. 1.10, or 10.1.11, (B)

15

the entry by the Bankruptcy Court of any Order confirming any Chapter 11 Plan pursuant to which Seller is restructured or reorganized or a transaction disposing of substantially all of the Property to a third party purchaser in a single transaction is to be consummated, (C) the termination of this Agreement by reason of Seller's Material Breach, or (D) Buyer's termination of this Agreement in accordance with its rights pursuant to Section 10.1.9 above.

"Buyer Material Breach" means any inaccuracy in any of Buyer's representations or warranties contained in this Agreement or any breach of any of Buyer's covenants or agreements contained in this Agreement which, individually or in the aggregate with all other such inaccuracies and breaches, (i) would result in a failure of a condition set forth in Section 3.1, and (ii) is either incapable of being cured or, if capable of being cured, is not cured in all material respects within the earlier of (x) fifteen (15) calendar days after written notice thereof and (y) the Outside Date.

"Chapter 11 Plan" means any Chapter 11 plan in the Case with respect to any of the debtors other than a Liquidating Plan.

"Seller Material Breach" means any inaccuracy in any of Seller's representations or warranties contained in this Agreement or any breach of any of Seller's covenants or agreements contained in this Agreement which, individually or in the aggregate with all other such inaccuracies and breaches, (i) would result in a failure of a condition set forth in Section 3.1, and (ii) is either incapable of being cured or, if capable of being cured, is not cured in all material respects within the earlier of (x) fifteen (15) calendar days after written notice thereof and (y) the Outside Date.

11. Miscellaneous.

11.1    [This paragraph is intentionally omitted]

11.2 Notices. Unless otherwise provided herein, any notice, tender, or delivery to be given hereunder by any Party to the other may be effected by personal delivery in writing, or by registered or certified mail, postage prepaid, return receipt requested or by facsimile, and shall be deemed communicated as of the date of mailing or facsimile transmission (with answer back confirmation of such transmission). Mailed notices shall be addressed as set forth below, but each Party may change his address by written notice in accordance with this Section 12.2.

> To Seller;                    Advance Presort Inc.
>                                4258 Knox Avenue
>                                Chicago, IL 60641
>                                Attn: Dennis MacHarg
>                                Fax Number:

16

With a copy to:          Crane, Heyman, Simon, Welch &Clar
                         135 S. LASalle Street
                         Chicago, IL 60603
                         Attn: Scott S. Clar

To Buyer:
                         API Holdings & Management, LLC
                            17W703 Butterfield Road
                          Suite G
                         Oakbrook Terrace, IL 60181
                         Attn: _Gregory R. Less
With a copy to:
                         The Golding Law Offices, P.C.
                         500 N. Dearborn St., 2nd Floor
                         Chicago, Illinois 60654
                         Attn: Richard N. Golding
                         Fax Number: (312) 775-5720

11.3 Entire Agreement.  This instrument and the documents to be executed pursuant hereto contain the entire agreement between the Parties relating to the sale of the Property. Any oral representations or modifications concerning this Agreement or any such other document shall be of no force and effect excepting a subsequent modification in writing, signed by the Party to be charged.

11.4 Modification. This Agreement may be modified, amended or supplemented only by a written instrument duly executed by all the Parties hereto.

11.5 Closing Date. AJI actions to be taken on the Closing pursuant to this Agreement shall be deemed to have occurred simultaneously, and no act, document or transaction shall be deemed to have been taken, delivered or affected until all such actions, documents and transactions have been taken, delivered or effected.

11.6 Severability. Should any term, provision or paragraph of this Agreement be determined to be illegal or void or of no force and effect, the balance of this Agreement shall survive.

11.7 Captions. All captions and headings contained in this Agreement are for convenience of reference only and shall not be construed to limit or extend the terms or conditions of this Agreement.

11.8 Further Assurances. Each Party hereto will execute, acknowledge and deliver any further assurance, documents and instruments reasonably requested by any other Party for the purpose of giving effect to the transactions contemplated herein or the intentions of the Parties with respect thereto; provided that nothing herein shall be deemed to require any Party to execute or deliver any such further assurance, document or instrument to the extent that the same could in any material way increase the burdens, obligations or liabilities otherwise imposed upon such Party by this Agreement.

17

11.9 Waiver.     No waiver of any of the provisions of this Agreement shall be deemed, or shall constitute, a waiver of other provisions, whether or not similar, nor shall any waiver constitute a continuing waiver. No waiver shall be binding unless executed in writing by the Party making the waiver.

11.10 Brokerage Obligations. Seller and the Buyer each represent and warrant to the other that, such Party has incurred no liability to any broker or agent with respect to the payment of any commission or other compensation regarding the consummation of the transaction contemplated hereby. It is agreed that if any claims for commissions, fees or other compensation, including, without limitation, brokerage fees, finder's fees, or commissions are ever asserted against Buyer or Seller in connection with this transaction by any party other than the Broker (for whose commission or other compensation Seller shall be solely responsible), all such claims shall be handled and paid by the Party whose actions form the basis of such claim and such Party shall indemnify, defend (with counsel reasonably satisfactory to the Party entitled to indemnification), protect and save and hold the other harmless from and against any and all such claims or demands asserted by any person, firm or corporation in connection with the transaction contemplated hereby.

11.11 Payment of Fees and Expenses. Except as provided in Sections 11 and 12.1 above, each Party to this Agreement shall be responsible for, and shall pay, all of its own fees and expenses, including those of its counsel, incurred in the negotiation, preparation and consummation of this Agreement and the transaction described herein.

11.12 Survival.     The respective representations and warranties of Buyer and Seller under this Agreement shall lapse and cease to be of any further force or effect effective upon the Closing. Except as provided in the immediately preceding sentence, the covenants and agreements of Seller and Buyer herein, or in any certificates or other documents delivered prior to or at the Closing, shall not be deemed waived or otherwise affected by the Closing.

11.13 Assignments. This Agreement shall not be assigned by any Party hereto without the prior written consent of the other Party hereto, which consent the Parties may grant or withhold in their sole and absolute discretion; provided, that the Buyer shall be permitted to assign its right to purchase all or any portion of the Property to anyone or more directly or indirectly wholly-owned subsidiaries of the Buyer; provided, further, that the Buyer or such assignee(s) may pledge this Agreement and the rights of the Buyer hereunder to a lender or other financing source as collateral security for loans made to the Buyer or such assignee(s).

11.14 Binding Effect. Subject to the provisions of Section 12.13, above, this Agreement shall bind and inure to the benefit of the respective heirs, personal representatives, successors, and assigns of the Parties hereto, including, without limitation, any chapter 11 trustee hereinafter appointed in the Case or any trustee appointed in a chapter 7 case if the Case is converted from chapter 11.

11.15 Applicable Law. This Agreement shall be governed by and construed in accordance with the laws of the State of Illinois.

18

11.16 <u>Good Faith</u>. All Parties shall do all acts and execute all documents required to carry out the terms of this Agreement and act in good faith with respect to the terms and conditions contained herein before and after Closing.

11.17 <u>Construction</u>. In the interpretation and construction of this Agreement, the Parties acknowledge that the terms hereof reflect extensive negotiations between the Parties and that this Agreement shall not be deemed, for the purpose of construction and interpretation, drafted by either Party hereto.

11.18 <u>Counterparts</u>. This Agreement may be signed in counterparts. The Parties further agree that this Agreement may be executed by the exchange of facsimile signature pages provided that by doing so the Parties agree to undertake to provide original signatures as soon thereafter as reasonable in the circumstances.

11.19 <u>Bankruptcy Court Jurisdiction</u>. IF ANY DISPUTE ARISES OUT OF OR IN CONNECTION WITH THIS AGREEMENT OR ANY OF THE DOCUMENTS EXECUTED HEREUNDER OR IN CONNECTION HEREWITH, THE BANKRUPTCY COURT SHALL HAVE EXCLUSIVE PERSONAL AND SUBJECT MATTER JURISDICTION AND SHALL BE THE EXCLUSIVE VENUE TO RESOLVE ANY AND ALL DISPUTES RELATING TO THE TRANSACTION CONTEMPLATED BY THIS AGREEMENT. SUCH COURT SHALL HAVE SOLE JURISDICTION OVER SUCH MATTERS AND THE PARTIES AFFECTED THEREBY AND BUYER AND SELLER EACH HEREBY CONSENT AND SUBMIT TO SUCH JURISDICTION.

11.20 <u>Time is of the Essence</u>. Time is of the essence in this Agreement, and all of the terms, covenants and conditions hereof.

11.21 <u>Interpretation and Rules of Construction</u>. In this Agreement, except to the extent that the context otherwise requires:

11.21.1      when a reference is made in this Agreement to an Article, Section, Exhibit or Schedule, such reference is to an Article or Section of, or an Exhibit or a Schedule to, this Agreement unless otherwise indicated;

11.21.2      the headings and captions used in this Agreement are for reference purposes only and do not affect in any way the meaning or interpretation of this Agreement.

11.21.3      whenever the words "include," "includes" or "including" are used in this Agreement, they are deemed to be followed by the words "without limitation";

11.21.4      the words "hereof," "herein" and "hereunder" and works of similar import, when used in this Agreement, refer to this Agreement as a whole and not to any particular provision of this Agreement;

19

11.21.5      all terms defined in this Agreement have the defined meanings when used in any certificate or other document made or delivered pursuant hereto, unless otherwise defined therein;

11.21.6      the definitions contained in this Agreement are applicable to the singular as well as the plural forms of such terms;

11.21.7      any law defined or referred to herein or in any agreement or instrument that is referred to herein means such law or statute as from time to time amended, modified or supplemented, including by succession of comparable successor laws;

11.21.8      references to a person are also to its permitted successors and assigns; and

11.21.9      the use of "or" is not intended to be exclusive unless expressly indicated otherwise.

**In Witness Whereof,** Buyer and Seller have executed this Asset Purchase Agreement as of the day and year first above written.

**BUYER:**

**API Holdings & Management, LLC,**
**a Illinois limited liability company**

By: _____ __
Name:
Its:

**SELLER:**

**Advance Presort Service, Inc.,**
**a Illinois corporation**

21

All SCHEDULES

**[To be attached]**

Exhibit" A"

## ASSIGNMENT AND ASSUMPTION OF LEASES AND CONTRACTS

This Assignment and Assumption of Leases and Contracts (this "Assignment") is entered into as of this _ day of                2012, between API Holdings & Management, LLC, a Illinois limited liability company (the "Assignee"), on the one hand, and Advance Presort Service, Tnc., an Illinois corporation ("Advance"), , the "Assignor"), Assignor being a Debtor and Debtor in Possession under Case No. 12-19621 in the United States Bankruptcy Court for the District for the Northern District of Illinois, with respect to the following facts and circumstances:

A.      Assignor, as the Seller, and Assignee, as Buyer, have heretofore entered into that certain Asset Purchase Agreement dated                _,2012 (the "Purchase Agreement"). Except for terms specifically defined herein, the capitalized terms used in this Assignment shall have the same meanings as capitalized terms used in the Purchase Agreement.

B.      Concurrently with the mutual execution and delivery of this Assignment, Seller and Assignee are consummating the transactions contemplated by the Purchase Agreement. Assignor and Assignee are executing and delivering this Assignment in satisfaction of their respective obligations pursuant to Sections 2.9.1 and 2.10.2 of the Purchase Agreement.

NOW, THEREFORE, for good and valuable consideration, the receipt and adequacy of which Assignor and Assignee hereby acknowledge, Assignor and Assignee hereby agree as follows:

1. Assignment.Effective.  as of the Closing Date, Assignor hereby assign to Assignee all of its right, title and interest in and to the Leases and Contracts (collectively, the "Assigned Contracts").

2. Assumption. Effective as of the Closing Date, Assignee hereby accepts the foregoing assignment and assumes and agrees to be bound by the terms and provisions of the Assigned Contracts and to faithfully perform all of Assignor's obligations thereunder to be performed from and after the Closing Date as though Assignee had been the original contracting Party thereunder.

3. Amendments. This Assignment may only be amended by a writing signed by both Assignor and Assignee.

23

4. <u>Execution in- Counterparts</u>. This Assignment may be executed in counterparts and delivered by the delivery of facsimile signatures; provided, however, that if the Parties exchange facsimile signatures, each of them agrees to provide the other with a copy of this Assignment bearing their original signature promptly thereafter.

5. <u>Delivery Pursuant to Purchase Agreement.</u> Notwithstanding anything to the contrary herein, Assignor and Assignee are executing and delivering this Assignment in accordance with and subject to all of the terms and provisions of the Purchase Agreement (including, without limitation, the acknowledgement and disclaimer set forth in Section 6).

6. <u>Governing Law</u>. This Assignment shall be governed by and construed and enforced in accordance with the laws of the State of Illinois.

24

**IN WITNESS WHEREOF,** Assignor and Assignee have executed this Assignment as of the day and year first set forth above.

<u>ASSIGNOR:</u>

**Advance Presort Service, Inc.,**
**a Illinois corporation**

<u>ASSIGNEE:</u>

**API Holdings & Management, LLC,**
**a Illinois limited liability company**

By:
Name:
Its:

Exhibit "B"

BILL OF SALE AND ASSIGNMENT

Pursuant to Section 2.9.2 of that certain Asset Purchase Agreement dated October_,
2012 (the "Purchase Agreement"), by and between API Holdings & Management, LLC, a Illinois
limited liability company ("Buyer"), on the one hand, and Advance Presort Service, Inc., a Illinois
corporation Seller being a Debtor and Debtor in Possession under Case No. 12-19621 in the United
States Bankruptcy Court for the Northern District of Illinois, on the other hand, and for good and
valuable consideration, the receipt and sufficiency of which Seller hereby expressly acknowledges,
hereby sells, transfers, assigns and delivers to Buyer Seller's right, title and interest in and to the
Personal Property, including, but not limited to, its general intangibles, inventory work in process
and as may be otherwise covered by certain assignment and assumption agreements made as part of
this transaction.

Except for terms specifically defined in this Bill of Sale, all capitalized terms used in
herein shall have the same meanings as such terms have when utilized in the Purchase
Agreement.

Seller covenants and agrees to execute and deliver further instruments of transfer arid
assignment and take such other action as Buyer may reasonably request to more effectively
transfer and assign to and vest in Buyer the Personal Property; provided that nothing herein shall
. be deemed to require Seller to execute or deliver any such further document or instrument or take
any such action to the extent that the same could in any material way increase the burdens,
obligations or liabilities otherwise imposed upon Seller by the Purchase Agreement.

Notwithstanding anything to the contrary herein, Seller is executing and delivering this
Bill of Sale and Assignment in accordance with and subject to all of the terms and provisions of
the Purchase Agreement (including, without limitation, the acknowledgement and disclaimer set
forth in Section 6 of the Purchase Agreement).

26

**IN WITNESS WHEREOF,** Seller has caused this Bill of Sale and Assignment to be executed as of the _ day of November2012.

<u>**SELLER:**</u>

**Advance Presort Service,** Inc.,
**a Illinois corporation**

By:
Name:
**Its:**

Exhibit *"C"*

ASSIGNMENT OF INTANGIBLE PROPERTY

This Assignment of Intangible Property (this "Assignment") is entered into as of this _ day of November,2012, by and between API Holdings & Management, LLC, a Illinois limited liability company (the "Assignee"), on the one hand, and Advance Presort Service, Inc., a Illinois corporation ("Advance"), on the other "Assignor"), is a Debtor in Possession under Case No. 12-19621 in the United States Bankruptcy Court for the Northern District of Illinois, with respect to the following facts and circumstances:

(A)     Assignor and Assignee have heretofore entered into that certain Asset Purchase Agreement dated October 30_,2012 (the "Purchase Agreement"). Except for terms specifically defined in this Assignment, the capitalized terms used in this Assignment shall have the same meanings as such terms when used in the Purchase Agreement.

(B)     Concurrently with the execution and delivery of this Assignment, Seller and Assignee are consummating the transactions contemplated by the Purchase Agreement. Pursuant to Sections 2.9.7 and 2.10.3 of the Purchase Agreement, Assignor and Assignee are required to execute and deliver this Assignment at the Closing.

NOW, THEREFORE, FOR GOOD AND VALUABLE CONSIDERA, the receipt and sufficiency of which Assignor hereby expressly acknowledge, each Assignor, as to itself, hereby assigns, conveys, transfers and sets over unto Assignee, all of its right, title and interest, if any, in and to all Intangible Property as defined in an Asset Purchase Agreement dated October 30,2012 between the parties. This Assignment shall inure to the benefit of, and be binding upon, the successors, executors, administrators, legal representatives and assigns of Assignor and Assignee.

Notwithstanding anything to the contrary herein, Assignor and Assignee are executing and delivering this Assignment in accordance with and subject to all of the terms and provisions of the Purchase Agreement (including, without limitation, the acknowledgement and disclaimer set forth in Section (6).

This Assignment shall be governed by and construed and enforced in accordance with the laws of the State of Illinois.

28

**IN WITNESS WHEREOF,** Assignor and Assignee have executed this Assignment as of the _ day of November,2012.

**ASSIGNOR:**

**Advance Presort Service, Inc.,**
**a Illinois corporation**

By:      _____
Name:    ------------------------------
Its:

**ASSIGNEE:**

**API Holdings & Management, LLC,**
**a Illinois limited liability company**

By:      _____
Name:    ------------------------------
Its:

29

Exhibit "D"

ASSUMPTION AGREEMENT

This Assumption Agreement (this "Assumption") is entered into as of this _ day of
__ ,2012, by and between API Holdings & Management, LLC, a Illinois limited liability company
("Buyer"), and on the other Advance Presort Services, Inc. "Seller"), each of the Assignor being a
Debtor and Debtor in Possession under Case No. 12-19621 in the United States Bankruptcy Court
for the Northern District of Illinois, with respect to the following facts and circumstances:

A.    Seller and Buyer have heretofore entered into that certain Asset Purchase
Agreement dated October _,2012 (the "Purchase Agreement"). Except for terms
. specifically defined herein, the capitalized terms used in this Assumption shall have the same
meanings as capitalized terms used in the Purchase Agreement.

B.    Concurrently with the execution and delivery of this Assumption, Buyer and
Seller are consummating the transactions contemplated by the Purchase Agreement.

NOW, THEREFORE, for good and valuable consideration, the receipt and adequacy of
which Buyer hereby acknowledges, Buyer hereby agrees as follows:

1.    Assumption. Effective as of the Closing Date, Buyer hereby assumes and agrees
fully and faithfully to perform all of the Assumed Liabilities.

2.    Amendments. This Assumption may only be amended by a writing signed by
both Buyer and Seller.

3.    Governing Law. This Assumption shall be governed by and construed and
enforced in accordance with the laws of the State of Illinois.

4.    Execution in Counterparts. This Assumption may be executed in counterparts and
delivered by the delivery of facsimile signatures; provided, however, that if the parties exchange
facsimile signatures, each of them agrees to provide the other with a copy of this Assumption
bearing their original signature promptly thereafter.

30

**IN WITNESS WHEREOF,** Buyer has executed this Assumption as of the day and year first set forth above.

**BUYER:**

**API Holdings & Management, LLC,
an Illinois limited liability company**

By: _____

Name:

Its: _____ __

**SELLER:**

**ASSIGNOR:**

**Advance Presort Service, Inc.,
a IIIinois corporation**

By:

Name:

Its: _____

31

Exhibit "E"

**ADDITIONAL DEFINITIONS**

In addition to the terms defined elsewhere in this Agreement, the following terms when used in this Agreement shall have the respective meanings set forth below

(1)    "Current Assets" means the sum of accounts receivable (net), inventory, and prepaid expenses included in the Property, each computed in accordance with GAAP consistent with the Seller' past practices.

(2)    "DIP Financing Agreements" that certain Debtor-In-Possession Financing Agreement dated (as amended or modified thereafter, the "DIP Credit Agreement"), together with all other agreements, documents, notes, certificates, and instructions executed and /or delivered with, to or in favor of the DIP Lender.

(3)    "DIP Lender" means American Chartered Bank].

(4)    "DIP Order" means that certain                                          and entered in the Case.

(5)    "Employees" means all individuals, as of the date hereof, whether or not actively at work as of the date hereof, who are employed by the Seller in connection with the Business, together with individuals, if any, who are hired in respect of the Business after the date hereof and prior to the Closing.

(6)    "Environmental Law" means any law or regulation pertaining to: (a) the protection of health, safety and the indoor or outdoor environment; (b) the conservation, management or use of natural resources and wildlife; (c) the protection or use of surface water and ground water; (d) the management, manufacture, possession, presence, use, generation, transportation, treatment, storage, disposal, emission, discharge, release, threatened release, abatement, removal, remediation or handling of, or exposure to, any hazardous substance; or (e) pollution (including any emission, discharge or release to air, land, surface water and ground water of any material); and includes, without limitation, CERCLA and the Solid Waste Disposal Act, as amended 42 D.S.C. § 6901 et seq.

(7)    "Final Order" means, with respect to any order or other action of a governmental authority (including, but not limited to, the Bankruptcy Court), an order or other action (a) as to which no appeal, notice of appeal, motion to amend or make additional findings of fact, motion to alter or amend judgment, motion for rehearing or motion for new trial has been timely filed or, if any of the foregoing has been timely filed, it has been disposed of in a manner that upholds and affirms the subject order in all material respects without the possibility for further appeal or rehearing

32

thereon; and (b) as to which the time for instituting or filing an appeal, motion for rehearing or motion for new trial shall have expired.

(8)   "GAAP" means U.S. generally accepted accounting principles, consistently applied in accordance with Seller's historical practices.

(9)   "Indebtedness" means, with respect to any Person, (a) all indebtedness of such Person, whether or not contingent, for borrowed money, (b) all obligations of such Person for the deferred purchase price of property or services, (c) all obligations of such Person evidenced by notes, bonds, debentures or other similar instruments, (d) all indebtedness created or arising under any conditional sale or other title retention agreement with respect to property acquired by such Person (even though the rights and remedies of Seller or lender under such agreement in the event of default are limited to repossession or sale of such property), (e) all obligations of such Person as lessee under leases that have been or should be, in accordance with generally accepted accounting principles (GAAP), recorded as capital leases, (f) all obligations, contingent or otherwise, of such Person under acceptance, letter of credit or similar facilities, (g) all obligations of such Person to purchase, redeem, retire, defease or otherwise acquire for value any capital stock of such Person or any warrants, rights or options to acquire such capital stock, valued, in the case of redeemable preferred stock, at the greater of its voluntary or involuntary liquidation preference plus accrued and unpaid dividends, (h) all Indebtedness of others referred to in clauses (a) through (g) above guaranteed directly or indirectly in any manner by such Person, or in effect guaranteed directly or indirectly by such Person through an agreement (1) to payor purchase such Indebtedness or to advance or supply funds for the payment or purchase of such Indebtedness, (2) to purchase, sell or lease (as lessee or lessor) property, or to purchase or sell services, primarily for the purpose of enabling the debtor to make payment of such Indebtedness or to assure the holder of such Indebtedness against loss, (3) to supply funds to or in any other manner invest in the debtor (including any agreement to pay for property or services irrespective of whether such property is received or such services are rendered) or (4) otherwise to assure a creditor against loss and all Indebtedness referred to in clauses (a) through (f) above secured by (or for which the holder of such Indebtedness has an existing right, contingent or otherwise, to be secured by) any Lien on property (including, without limitation, accounts and contract rights) owned by such Person, even though such Person has not assumed or become liable for the payment of such Indebtedness.

(10)  "Liens" means all liens or other interests as defined in 11 U .S.C. § 363(f), encumbrances, rights of third parties (express or implied), claims (as defined in Section 101(5) of the Bankruptcy Code), Indebtedness, obligations, liabilities, judgments, demands, subleases, contractual commitments, mortgages, pledges, guarantees, security interests, conditional sale or other title retention agreements, charges, options, rights of first refusal, reservations, restrictions or interests of any kind, rights of others of every type and description, whether arising prior to or subsequent to the commencement of the Chapter 11, and whether imposed by

33

agreement, understanding, law, equity or otherwise, whether secured or unsecured, including without limitation:

(a) any and all claims, demands, damages, actions, causes of action, contracts, agreements, charges, sums of money, claims for attorney's fees, claim of any violation of any state or federal statutes, rules or regulations, and lawsuits of every kind and description, whether known or unknown, now existing, or which may hereafter arise against Seller; and

(b) employment contracts, accrued wages, salary or vacation pay, or unemployment compensation or severance pay to any present or former employee of Seller, any obligation to hire or otherwise employ any employees of Seller whether under any union agreements or otherwise, or obligations under any other employee benefit plan maintained by or for which any Seller is obligated or bound including, without limitation, those based upon length of service with any Seller or any and all other obligations owed to the former or present employees of any Seller, provided, however, (i) the term "Liens" shall specifically exclude any of the foregoing which comprise part of the Assumed Liabilities pursuant to Section 2.4 hereof and (ii) and in no event shall any provision of this Agreement requiring the removal of Liens be deemed to limit or affect Buyer's obligations with respect to the Assumed Liabilities (or any of them) or under the any of the provisions of Article 9 hereof in any way; and

(c) any and all liabilities and obligations under any Environmental Law; and

(d) any claims based on or asserting that Buyer is a successor in interest to Seller.
[NEED **TO MATCH THIS DEFINITION** TO THAT IN THE ORDER]

(11)    "Litigation" means any suit, action, arbitration, cause of action, claim, complaint, criminal prosecution, investigation, inquiry, demand letter, governmental or other administrative proceeding, whether at law or at equity, before or by any court, governmental authority, arbitrator or other tribunal.

(12)    "Material Adverse Effect" means any circumstance, change in, or effect on, assets, properties, or the Business of Seller, other than the Case, that, individually or in the aggregate with any other circumstances, changes in, or effects on, Seller or the Business (a) is, or could be, materially adverse to the Property, (b) could reasonably be expected to have a material adverse effect on the financial condition or results of operations derived from the Property, taken as a whole, or (c) could materially adversely affect the ability of Buyer to use the Property (taken as a whole) in the manner in which it is currently operated or conducted by Seller.

(13)    "Order" shall mean any judgment, order, writ, injunction, ruling, stipulation, determination, award or decree of or by, or any settlement under the jurisdiction of, any court or governmental authority.

34

# EXHIBIT F

(Order Approving Sale of Assets)

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS

Eastern Division

| | | |
|---|---|---|
| In Re: | ) | BK No.:   12-19621 |
| ADVANCE PRESORT SERVICE, INC. | ) | |
| | ) | |
| | ) | Chapter:  11 |
| | ) | Honorable Donald R. Cassling |
| | ) | |
| | ) | |
| Debtor(s) | ) | |

## ORDER APPROVING SALE OF ASSETS

Upon final hearing on the Motion of  Advance Presort Service, Inc. an Illinois corporation, debtor/debtor-in-possession herein ("Debtor"),  to (A) Establish Sales Procedures, (B) Set Hearing Date on Sale, and (C)Approve Form of Notice ("Motion"), concerning the sale of certain of the Debtor's assets, consisting of accounts receivable over and above the secured interest of the Internal Revenue Service, machinery and equipment and goodwill free and clear of all liens, and other interests ("Assets") pursuant to 11 U.S.C. Section 363(f); and certificates of service having been filed showing service of the Motion and notice of the sale of the Assets on all parties-in-interest and other persons and entities entitled to receive notice thereof in accordance with 11 U.S.C. Sections 102(1) and 363(b), and Federal Rules of Bankruptcy Procedure 2002, 6004 and 9007; and American Chartered Bank, and Internal Revenue Service, the only parties with liens attaching to the Assets having stated to the Court that they consent to the Sale of the Assets, and there being a successful authorized bidder for the Assets, an auction of the Assets having been conducted on November 16, 2012, whereupon various bids were received for the Assets, the Debtor having advised the Court that _____ (the "Successful Bidder") made the highest and best bid for the Assets at _____ (the "Successful Bid Price"), and the Court having found that the auction of the Assets was conducted fairly; and the Debtor having demonstrated a sufficient basis for the sale of the Assets under 11 U.S.C. Section 363, and having found that such action is an appropriate exercise of the Debtor's business judgment and in the best interest of the Debtor, its estate and creditors, and having found that the Successful Bidding Price constitutes full and adequate consideration and reasonably equivalent value for Assets, that none of the bidders were Insiders, as that term is defined in 11 U.S.C. Section 101(31), and none of the bidders were a continuation of the Debtor, there is no continuity of enterprise between the Debtor and any of the bidders, the bidders are not successors to the Debtor and the transactions under the Asset Purchase Agreement attached hereto as Exhibit A does not amount to, or otherwise constitute, a consolidation, merger, or de facto merger of any of the bidders and the Debtor, and all parties-in-interest having been heard or having had the opportunity to be heard regarding the Motion and sale of the Assets, and there being no objections to the Motion or the sale of any of the Assets;

THE COURT HEREBY FINDS, CONCLUDES AND ORDERS THAT:

A.    The requirements of 11 U.S.C. Section 363(f) for a sale of the Assets free and clear of any interest in the Assets have been met.  The Debtor is authorized to sell the Assets to the _____ on terms of the same or as substantially similar to the terms of the Asset Purchase Agreement dated _____, a copy of which is attached hereto as Exhibit A.  In the event of the closing of a sale of the Assets to _____, _____ shall take the Assets free and clear of all liens, claims and encumbrances, pursuant to 11 U.S.C. Section 363(f), with all valid liens to attach

thereto.

    B.   The sale of the Assets shall close as soon as practicable at the offices of Crane, Heyman, Simon, Welch & Clar, 135 S. LaSalle St., Suite 3705, Chicago, Illinois. At the closing, and subject to the Debtor's receipt of the applicable Bid Price, (i) the Assets shall be transferred to the _____ and the Debtor shall execute and deliver to the bidder Bill of Sale for the Assets and (ii) all rights associated with the Assets (the "Associated Rights") including, without limitation, any and all permits and development rights of any nature and rights, if any, shall be assigned to _____ and the Debtor shall execute and deliver to _____, an assignment of such Associated Rights. The officers and directors of the Debtor are authorized to execute any instrument to be executed and delivered under this Order or any other document, including a closing statement, incident to the sale of the Assets or otherwise necessary to consummate the transactions contemplated by the Asset Purchase Agreement or to transfer the Associated Rights.

    C.   The Debtor has full corporate power and authority to execute the Asset Purchase Agreement and all other documents contemplated thereby, and the sale of the Assets has been duly and validly authorized by all corporate authority necessary to consummate the transactions contemplated by the Asset Purchase Agreement. Neither the execution of the Asset Purchase Agreement by the Debtor nor the consummation by the Debtor of the sale of the Assets in accordance with its terms will constitute a violation of any law, regulation or ordinance under which the Debtor or the Assets are bound. No consents or approvals, other than as expressly provided for in the Assets Purchase Agreement, are required by the Debtor to consummate such transactions.

    D.   If a bidder purchases the Assets, the bidder will not be assuming any of the debts, liabilities or obligations of the Debtor, and the bidder shall not in any way be liable or responsible for any liabilities, commitments or obligations in any way related to the Debtor or the Property arising before the date of any closing under the Asset Purchase Agreement (the "Closing Date"), except as expressly set forth herein and in the Asset Purchase Agreement. No executory contracts or unexpired leases are being assumed in connection with the Asset Purchase Agreement or assigned to the bidder pursuant to 11 U.S.C. Section 365. The Debtor and the bidder do not have any common controlling shareholders or senior management. The Asset Purchase Agreement is being entered into in good faith and not to hinder, delay or defraud any creditors of the Debtor.

    E.   The Bid Price is provided by the Successful Bidder as consideration for the Assets under the Asset Purchase Agreement (i) are fair and reasonable, (ii) may not be avoided under 11 U.S.C. Section 363(n) or other applicable law and (iii) constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code, the Uniform Fraudulent Conveyance Act, Uniform Fraudulent Transfer Act, and any similar laws of any state whose law is applicable to the Asset Purchase Agreement.

    F.   The Court finds that the Successful Bidder has acted in good faith in its purchase of the Assets and is therefore entitled to all of the protections and benefits afforded by 11 U.S.C. Section 363(m) to an entity that purchases property of the estate in good faith. Accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the sale of any of the Assets shall not affected the validity of the Sale.

    G.   The Asset Purchase Agreement was negotiated and entered into in good faith, based upon arm's length negotiations and without collusion. Neither the Debtor nor the Successful Bidder has engaged in any conduct that would prevent the applications of 11 U.S.C. Section 363(m) or cause the application of 11 U.S.C. Section 363 (n) to the Asset Purchase Agreement.

H.    This Order shall be binding upon and govern the acts of all persons or entities, including, without limitation, all filing agents, recording agencies, secretaries of state and all other persons and entities who may be required by operation of law to accept, file, register or otherwise record or release any documents or instruments.

I.    Any portion of the Asset Purchase Agreement and any related agreements may be waived, modified, amended, or supplemented by written agreement of the Debtor and the bidder without further action of the Court; provided, however, that any such waiver, modification, amendment, or supplement is not material and substantially conforms to and effectuates the Asset Purchase Agreement. The failure specifically to include any particular provisions of the Asset Purchase Agreement or any related agreements in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court, the Debtor, and the successful bidders that the Asset Purchase Agreement and any related agreements are authorized and approved in their entirety with such amendments thereto as may be made by the parties in accordance with this Order before Closing Date.

J.    This Order is effective immediately and the stay of Bankruptcy Rule 6004 is waived. This Order and the Asset Purchase Agreement shall remain effective and enforceable notwithstanding the dismissal or conversion of this Chapter 11 bankruptcy case, and shall be binding upon, and shall inure to the benefit of, the Debtor, the successful bidders, and their respective successors and assigns, including without limitation, any trustee appointed for the Debtor in this Chapter 11 case or any trustee appointed in a Chapter 7 case if this case is converted from Chapter 11.

Enter:


Dated:                                                                    United States Bankruptcy Judge

**Prepared by:**
Scott R. Clar
(Atty. No. 06183741)
Crane, Heyman, Simon, Welch & Clar
135 South LaSalle Street, Suite 3705
Chicago, IL 60603
(312) 641-6777

Exhibit "G"

**Bidding Procedures Order**

# Howard S. Leifman, Ltd.
## T. S. Wright, Jr., M.D.
### Billing Statement

| Billed Date | Name | Item Description | Hours | Hourly Rate | Debit | Credit |
|---|---|---|---|---|---|---|
| 01/17/2011 | T.S. Wright, Jr., M.D. | Enter all Deposits and payment transactions for November, reconcile bank accounts, prepare monthly Trustee Reports | 1.9 | 150.00 | | 285.00 |
| 01/17/2011 | T.S. Wright, Jr., M.D. | Enter all deposits and payment transactions for December, reconcile bank accounts, prepare monthly Trustee Reports | 1.7 | 150.00 | | 255.00 |
| 01/18/2011 | T.S. Wright, Jr., M.D. | Meet With Dr. Wright @ Montrose offices to review financials and monthly reports for November & December | .5 | 150.00 | | 75.00 |
| 01/25/2011 | T.S. Wright, Jr., M.D. | Prepare all 2010 payroll tax returns,(941, IL 941, UC3/40, 940, W-3 and W-2 forms for all employees | 3.2 | 150.00 | | 480.00 |
| 01/29/2011 | T.S. Wright, Jr., M.D. | Compute wages net to gross for January-July (no records available for gross/net checks) | 1.4 | 150.00 | | 210.00 |
| 02/28/2011 | T.S. Wright, Jr., M.D. | Enter all Deposits and payment transactions for January, reconcile bank accounts, prepare monthly Trustee Reports | 3.1 | 150.00 | | 465.00 |
| 04/30/2011 | T.S. Wright, Jr., M.D. | Payroll tax return prep - Prepare 1st quarter payroll tax returns. | 1.7 | 150.00 | | 255.00 |
| 06/02/2011 | T.S. Wright, Jr., M.D. | Enter all deposits and payment transactions for February, reconcile bank accounts, prepare monthly Trustee Reports | 1.9 | 150.00 | | 285.00 |
| 06/03/2011 | T.S. Wright, Jr., M.D. | Enter all deposits and payment transactions for March, reconcile bank accounts, prepare monthly Trustee Reports | 2.4 | 150.00 | | 360.00 |
| 06/04/2011 | T.S. Wright, Jr., M.D. | Enter all deposits and payment transactions for April, reconcile bank accounts, prepare monthly Trustee Reports | 2.3 | 150.00 | | 345.00 |
| 06/05/2011 | T.S. Wright, Jr., M.D. | Enter all deposits and payment transactions for May, reconcile bank accounts, prepare monthly Trustee Reports | 2.1 | 150.00 | | 315.00 |
| 06/23/2011 | T.S. Wright, Jr., M.D. | Meeting with Scott Ciar & Dr. Wright @ Montrose Office | 2.1 | 150.00 | | 315.00 |
| 07/02/2011 | T.S. Wright, Jr., M.D. | Review and begin compilation of 2008 and 2009 financial records | 4.2 | 150.00 | | 630.00 |
| 07/02/2011 | T.S. Wright, Jr., M.D. | Sort check registers for 2008/2009 begin setup of journal entries | 2.4 | 150.00 | | 360.00 |
| 06/29/2011 | T.S. Wright, Jr., M.D. | Meet with Dr. Wright, prepare financial projections for plan documents. | 4.4 | 150.00 | | 660.00 |
| 07/29/2011 | T.S. Wright, Jr., M.D. | Enter all deposits and payment transactions for June, reconcile bank accounts, prepare monthly Trustee Reports | 2.7 | 150.00 | | 405.00 |
| 08/10/2011 | T.S. Wright, Jr., M.D. | Meeting @ Scott Ciars offices review case issues discuss financial situation | 3.5 | 150.00 | | 525.00 |
| 08/10/2011 | T.S. Wright, Jr., M.D. | Auto Expenses (Parking Fees) | | 30.00 | | 30.00 |
| 08/12/2011 | T.S. Wright, Jr., M.D. | Meet with Dr. Wright @ his office re: IRS issues and projections | 1.5 | 150.00 | | 225.00 |
| 08/16/2011 | T.S. Wright, Jr., M.D. | Enter all deposits and payment transactions for July, reconcile bank accounts, prepare monthly Trustee Reports | 3.5 | 150.00 | | 525.00 |
| 08/17/2011 | T.S. Wright, Jr., M.D. | Meeting @ S. Ciar office & court state w/Dr. Wright, Scott Ciar and others. Travel to downtown and from court. | 4.3 | 150.00 | | 645.00 |
| 08/17/2011 | T.S. Wright, Jr., M.D. | Auto Expenses (Parking Fees) | | 30.00 | | 30.00 |
| 09/10/2011 | T.S. Wright, Jr., M.D. | Meet w/ Dr. Wright @ his office discuss projections/ sign & review current (July) reports and gather August bank records | 2.6 | 150.00 | | 390.00 |
| 09/20/2011 | T.S. Wright, Jr., M.D. | Enter all deposits and payment transactions for August, reconcile bank accounts, prepare monthly Trustee Reports | 3.1 | 150.00 | | 465.00 |
| 11/08/2011 | T.S. Wright, Jr., M.D. | 3rd Quarter payroll tax return 941, IL 941 and UC 3/40 prepare deposit amounts for 940 | 1.4 | 150.00 | | 210.00 |
| 11/11/2011 | T.S. Wright, Jr., M.D. | Enter all deposits and payment transactions for September, reconcile bank accounts, prepare monthly Trustee Reports | 3.2 | 150.00 | | 480.00 |
| 11/12/2011 | T.S. Wright, Jr., M.D. | Enter all deposits and payment transactions for October, reconcile bank accounts, prepare monthly Trustee Reports | 4.0 | 150.00 | | 600.00 |
| 11/14/2011 | T.S. Wright, Jr., M.D. | Meet @ Dr. Wright's office, review Sept & October trustee reports and discuss current state of case and objections | 2.1 | 150.00 | | 315.00 |
| 12/13/2011 | T.S. Wright, Jr., M.D. | Meet w/Dr. Wright discuss payroll filings for 2009/ 2010 and IRS payroll tax issues. Discuss conversion to QuickBooks Online | 1.70 | 150.00 | | 255.00 |
| 12/19/2012 | T.S. Wright, Jr., M.D. | Enter all deposits and payment transactions for November, reconcile bank accounts, prepare monthly Trustee Reports | 2.2 | 150.00 | | 330.00 |

# EXHIBIT B

IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

IN RE:                                  )
                                        )        Case No. 12-19621
ADVANCE PRESORT SERVICE, INC.           )        Chapter 11
                                        )        Judge Cassling
        debtor/debtor-in-possession.    )

### NOTICE OF (I) SALE OF ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS AND ENCUMBRANCES; (II) SOLICITATION OF BIDS; (III) AUCTION; AND (IV) SALE HEARING

1.      On _____, 2012, the United States Bankruptcy Court for the Northern District of Illinois (the "**Bankruptcy Court**") entered an Order (I) Establishing Bidding Procedures in Connection with Solicitation of Offers for Sale of Assets; (II) Approving Form, Manner, Scope and Substance of Notice for Proposed Sale of Debtor's Assets, and (III) Establishing Time and Date of Auction, Final Hearing and Objection deadline (the "**Bid Procedures Order**"), which among other things, established bidding procedures (the "**Sale Procedures**"), which govern the manner in which the assets (the "**Purchased Assets**") of Advance Presort Service, Inc. (the "**Debtor**") will be sold. All capitalized terms used but not defined herein shall have the meanings assigned to them in the Bid Procedures Order. A copy of the Bid Procedures Order (without exhibits) along with a copy of the Sale Procedures are being served on you concurrently with this Sale Notice.

2.      The Debtor will sell the Purchased Assets in bulk, lots or piecemeal to the Successful Bidder free and clear of all liens, claims and encumbrances pursuant to 11 U.S.C. §363.

3.      All interested parties are invited to make offers to purchase all or some of the Purchased Assets in bulk, lots or piecemeal, in accordance with the terms and procedures set forth in the Sale Procedures.

4.      In accordance with the Sale Procedures, (I) the Debtor will conduct an auction for the Assets on November 21, 2012 at 10:00 a.m. at the offices of Crane, Heyman, Simon, Welch & Clar, 135 South LaSalle St., Suite 3705, Chicago, Illinois 60603, or such other time or other place as the Debtor shall notify all Qualified Bidders.

5.      Participation at the Auction is subject to the Sale Procedures and Bid Procedures Order. Any person that wishes to participate in the bidding process must become a "Qualified Bidder." The procedures for becoming a Qualified Bidder are set forth in the Bidding Procedures. A Qualified Bidder that desires to make a bid must deliver written copies of its offer to Debtor's counsel, Crane, Heyman, Simon, Welch & Clar, 135 South LaSalle St., Suite 3705, Chicago, Illinois 60603 Attn: Scott R. Clar; (ii) counsel to American Chartered Bank, c/o Fuchs & Roselli, Ltd., 440 W. Randolph St., #500, Chicago, IL 60606, Attn: Richard Perna, so that the offer is actually received by 12:00 pm. Central Daylight Time on November 19, 2012 (the "**Bid Deadline**").

6.      A hearing at which the Debtor will seek approval and authorization of the Sale to the Successful Bidder (the "**Sale Hearing**") is scheduled to be held on November 27, 2012 at 10:30 a.m. before the Honorable Donald R. Cassling in Room 619 at the United States Bankruptcy Court in the Everett McKinley Dirksen Federal Building, 219 South Dearborn Street, Chicago, Illinois, or as soon thereafter as counsel may be heard.  The hearing may be continued from time to time without further notice other than by announcement in open court or on the Court's calendar on the date scheduled for the Sale Hearing.

7.      Objections or responses, if any, to the Sale must (i) be in writing, (ii) state with specificity the nature of such objection; (iii) be filed with the Bankruptcy Court before November 14, 2012 at 3:00 p.m. (the "**Objection Deadline**"); and (iv) served so that it is actually received by the following parties on or prior to the Objection Deadline: (i) Debtor's Counsel, Crane, Heyman, Simon, Welch & Clar, 135 South LaSalle St., Suite 3705, Chicago, Illinois 60603 Attn: Scott R. Clar; (ii) counsel to American Chartered Bank, c/o Fuchs & Roselli, Ltd., 440 W. Randolph St., #500, Chicago, IL 60606, Attn: Richard Perna; (iii) the Office of the U. S. Trustee, 219 S. Dearborn, Suite 873, Chicago, Illinois 60604, Attn: Gretchen Silver.

8.      This Notice is qualified in its entirety by the Bid Procedures Order.

9.      Additional information regarding the Sale or the Sale Procedures may be obtained by contacting counsel for the Debtor, Crane, Heyman, Simon, Welch & Clar, 135 South LaSalle St., Suite 3705, Chicago, Illinois 60603 Attn: Scott R. Clar.

# EXHIBIT C

## EXHIBIT C

## PUBLIC NOTICE

### IN THE UNITED STATES BANKRUPTCY COURT
### NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

|  |  |  |
|---|---|---|
| IN RE: | ) | |
| | ) | Case No. 12-19621 |
| ADVANCE PRESORT SERVICE, INC. | ) | Chapter 11 |
| | ) | Judge Cassling |
| debtor/debtor-in-possession. | ) | |

### NOTICE OF (I) SALE OF ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS AND ENCUMBRANCES; (II) SOLICITATION OF BIDS; (III) AUCTION; AND (IV) SALE HEARING

1.      On _____, 2012, the United States Bankruptcy Court for the Northern District of Illinois (the "**Bankruptcy Court**") entered an Order (I) Establishing Bidding Procedures in Connection with Solicitation of Offers for Sale of Assets; (II) Approving Form, Manner, Scope and Substance of Notice for Proposed Sale of Debtor's Assets, and (III) Establishing Time and Date of Auction, Final Hearing and Objection deadline (the "**Bid Procedures Order**"), which among other things, established bidding procedures (the "**Sale Procedures**"), which govern the manner in which the assets (the "**Purchased Assets**") of Advance Presort Sservice, Inc. (the "**Debtor**") will be sold. All capitalized terms used but not defined herein shall have the meanings assigned to them in the Bid Procedures Order. A copy of the Bid Procedures Order (without exhibits) along with a copy of the Sale Procedures are being served on you concurrently with this Sale Notice.

2.      The Debtor will sell the Purchased Assets in bulk, lots or piecemeal to the Successful Bidder free and clear of all liens, claims and encumbrances pursuant to 11 U.S.C. §363.

3.      All interested parties are invited to make offers to purchase all or some of the Purchased Assets in bulk, lots or piecemeal, in accordance with the terms and procedures set forth in the Sale Procedures.

4.      In accordance with the Sale Procedures, (i) the Debtor will conduct an auction for the Assets on November 21, 2012 at 10:00 a.m. at the offices of Crane, Heyman, Simon, Welch & Clar, 135 South LaSalle St., Suite 3705, Chicago, Illinois 60603, or such other time or other place as the Debtor shall notify all Qualified Bidders.

5.      Participation at the Auction is subject to the Sale Procedures and Bid Procedures Order. Any person that wishes to participate in the bidding process must become a "Qualified Bidder." The procedures for becoming a Qualified Bidder are set forth in the Sale Procedures. A Qualified Bidder that desires to make a bid must deliver written copies of its offer to Debtor's counsel, Crane, Heyman, Simon, Welch & Clar, 135 South LaSalle St., Suite 3705, Chicago, Illinois 60603 Attn: Scott R. Clar; (ii) counsel to American Chartered Bank, c/o Fuchs & Roselli, Ltd., 440 W. Randolph St., #500, Chicago, IL 60606, Attn: Richard Perna, so that the offer is actually received by 12:00 pm. Central Daylight Time on November 19, 2012 (the "**Bid Deadline**").

6.      A hearing at which the Debtor will seek approval and authorization of the Sale to the Successful Bidder (the "**Sale Hearing**") is scheduled to be held on November 27, 2012 at 10:30 a.m. before the Honorable Donald R. Cassling in Room

619 at the United States Bankruptcy Court in the Everett McKinley Dirksen Federal Building, 219 South Dearborn Street, Chicago, Illinois, or as soon thereafter as counsel may be heard.  The hearing may be continued from time to time without further notice other than by announcement in open court or on the Court's calendar on the date scheduled for the Sale Hearing.

      7.     Objections or responses, if any, to the Sale must (i) be in writing, (ii) state with specificity the nature of such objection; (iii) be filed with the Bankruptcy Court before November 14, 2012 at 3:00 p.m. (the "**Objection Deadline**"); and (iv) served so that it is actually received by the following parties on or prior to the Objection Deadline: (i) Debtor's Counsel, Crane, Heyman, Simon, Welch & Clar, 135 South LaSalle St., Suite 3705, Chicago, Illinois 60603 Attn: Scott R. Clar; (ii) counsel to American Chartered Bank, c/o Fuchs & Roselli, Ltd., 440 W. Randolph St., #500, Chicago, IL 60606, Attn: Richard Perna; (iii) the Office of the U. S. Trustee, 219 S. Dearborn, Suite 873, Chicago, Illinois 60604, Attn: Gretchen Silver.

      8.     This Notice is qualified in its entirety by the Bid Procedures Order.

      9.     Additional information regarding the Sale or the Sale Procedures may be obtained by contacting counsel for the Debtor, Crane, Heyman, Simon, Welch & Clar, 135 South LaSalle St., Suite 3705, Chicago, Illinois 60603 Attn: Scott R. Clar.